IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *

MICHAEL F. KIELAR, as
Personal Representative of          *
the Estate of NICOLE DAWN
KIELAR, deceased, et al.,

                                    *

      Plaintiffs,

                                    *

      v.                                 CIVIL NO.: WDQ-06-3419

                                    *

GRANITE CONSTRUCTION COMPANY,
et al.,

                                    *

      Defendants.

                                    *

*    *    *    *    *    *    *    *    *    *    *    *    *

                          MEMORANDUM OPINION


      Michael F. Kielar, as personal representative of the estate

of Nicole Dawn Kielar, and Marilyn Kielar sued Metro Aviation,

Inc. ("Metro Aviation") and others, seeking wrongful death and

survival damages resulting from a medevac helicopter crash.

Pending is Metro Aviation's motion for summary judgment on the

choice of law for the wrongful death claims.  Although it appears

that Louisiana law will apply to the wrongful death claim,

because the choice of law determination is neither dispositive of

a claim nor appealable, Metro Aviation is not entitled to a

judgment; therefore, its motion for summary judgment will be

denied.

                                   1

I.   Background

Metro Aviation is a Louisiana corporation with its principle place of business there.  First Am. Compl. ¶ 2(1). On June 30, 2004, Air Methods Corporation sent a helicopter it had leased from Wells Fargo Bank Northwest to Metro Aviation in Shreveport, Louisiana.  Def. Mot. Summ. J. Ex. D at ¶ 9.  Air Methods contracted with Metro Aviation to (1) partially modify, (2) install a medical interior, and (3) paint the outside of the helicopter.  *Id.* at ¶ 6.  Metro Aviation renovated the cabin's interior and installed the patient gurney ("litter") and litter locking device.  Pl. Resp. Ex. C.

All work by Metro Aviation was done in Shreveport, Louisiana, and the helicopter was delivered to Air Methods there. Def. Mot. Summ. J. Ex. D at ¶¶ 9-15, 17.

The helicopter was inspected and FAA certified by Roland Howard, an FAA Designated Engineering Representative based in Austin, Texas, under a contract with Metro Aviation. *Id.*, Ex. E at 30, 134 and Ex. D at ¶ 6.  Howard tested Metro Aviation's installation work in Shreveport, prepared his report in Austin, and delivered the report to Metro Aviation in Shreveport.  *Id.* at 36-38, 134.

On January 10, 2005, flight paramedic Nicole Kielar was killed when the helicopter crashed into the Potomac River in Maryland.  Pl. Resp. Ex. A.  Before the crash, Kielar was sitting

in the helicopter's rear compartment.  Pl. Resp. Ex. G. at 372-
78.  On impact, the litter--installed by Metro Aviation--failed
to properly lock in place and struck Kielar's pelvis.  Pl. Resp.
at 4-5, *id.* at Ex. L, Ex. I.  The injury "debilitated and
incapacitated" Kielar and prevented her escape from the aircraft.
*Id.* at 5, Ex. L at 7-8.

On December 22, 2006, the Plaintiffs sued Metro Aviation and
others for negligence, strict products liability, and breach of
warranty, and sought wrongful death and survivor damages.  Paper
No. 36, First Am. Compl.  On September 20, 2007, the suit was
stayed and administratively closed pending completion of the NTSB
investigation.  Paper No. 68.  On March 20, 2008, the case was
reopened.  On January 23, 2009, Magistrate Judge Susan Gauvey
preliminarily granted a motion to compel discovery of documents
relevant "to the question of notice under the Louisiana discovery
rule," pending this Court's decision on whether Louisiana law
applies to the wrongful death claims against Metro Aviation.
Paper No. 131 at 1. On February 5, 2009, Metro Aviation moved for
summary judgment as to the law governing the wrongful death
claims against it.  Paper No. 133.

II.  Analysis

A.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there
is no genuine issue of material fact, and the moving party is

entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 324. A mere "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

A judgment is an appealable order. Fed. R. Civ. Proc. 54(a); Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2651. Generally, only final judgments may be appealed. 28 U.S.C. § 1291; Wright & Miller § 2656. A "district court's decision is appealable [under § 1291] only when the decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275 (1988) (*citing Catlin v. United States*, 324 U.S. 229, 233 (1945) (internal citations omitted). Because the Court's decision on the choice of law

4

question will not end the litigation, Metro Aviation is not entitled to summary judgment.

B.   Choice of Law

In diversity cases, the Court applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Co.*, 313 U.S. 487, 496-97 (1941).  In tort suits, Maryland generally follows the principle of *lex loci delicti*, which applies the law of the state where the injury occurred. *Laboratory Corp. of America v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (Md. 2006); *Farwell v. Un*, 902 F.2d 282, 287 (4th Cir. 1990).

Wrongful death actions, however, are governed by statute. Md. Cts. & Jud. Proc. Code Ann. § 3-901, *et seq*. (2008).  The Maryland wrongful death statute states that "[i]f the wrongful act occurred in another state, the District of Columbia, or a territory of the United States, a Maryland Court shall apply the substantive law of that jurisdiction." *Id.* at § 3-903(a). Accordingly, the choice of law analysis in wrongful death actions turns on where the "wrongful act" occurred. *Id; Jones v. Prince George's County, Md., et al.*, 378 Md. 98, 107-108, 835 A.2d 632, 638 (Md. 2003).  Choice of law questions are generally questions of law. *See Hoffman v. Citibank* (South Dakota), N.A., 546 F.3d 1078, 1082 (9th Cir. 2008); *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 999 (11th Cir. 2007);

5

*Waterfowl Ltd. Liability Co. v. U.S.*, 473 F.3d 135, 141 (5th Cir. 2006); Curley v. AMR Corp., 153 F.3d 5, 11 (2nd Cir. 1998); General *Ceramics Inc. v. Firemen's Fund Ins. Companies*, 66 F. 3d 647, 651 (3rd Cir. 1995).

    C.    Whether the Wrongful Act Occurred in Maryland or Louisiana

Metro Aviation contends that the alleged wrongful act was Metro Aviation's negligent design and installation of the litter's locking mechanism in Louisiana.  Def. Mot. Summ. J. at 14.  The Plaintiffs contend that the wrongful act was the locking mechanism's failure in Maryland.  Pl. Resp. at 11. Alternatively, the Plaintiffs contend that there is a genuine issue of material fact where the malfunctioning litter was designed.  *Id.* at 14.

The Maryland wrongful death statute defines "wrongful act" as "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued."  MD. CTS. & JUD. PROC. CODE ANN. § 3-901(e).

In *Farwell v. Un*, the Fourth Circuit distinguished "wrongful act" analysis under the wrongful death statute from the "last act to complete the tort" analysis of *lex loci delicti*.  902 F.2d 282, 287 (4th Cir. 1990).  *Farwell* applied the differing standards of care of Maryland and Delaware, respectively, to two doctors--one licensed in Maryland and the other in Delaware--for

6

wrongful death claims that resulted from their patient's suicide.
*Id.* Read narrowly, *Farwell* limited its holding to cases
involving standard-of-care analysis, *id.*, but *Farwell* made clear
that the choice of law under Maryland's wrongful death statute is
determined by the location of the defendant's actions.[1]  *Id.*

The Plaintiffs correctly note that neither *Farwell* nor *Jones*
is a products liability case, and urge the Court to follow *Debbis
v. Hertz*, 269 F.Supp. 671 (D. Md. 1967).[2]  Pl. Resp. at 13-14.

---

[1] The Plaintiffs incorrectly contend that *Farwell* focused on
the place of injury and death when deciding the choice of law
question.  Pl. Resp. at 13.  Although the victim committed
suicide in Maryland, where one of the Doctors practiced, the
court's choice of law inquiry centered on "the locus of the
'wrongful act' rather than the locus of death. . .."  *Farwell*,
902 F.2d at 287.
    Similarly, in *Jones v. Prince George's County*, the Court of
Appeals of Maryland held that a police chief and several
municipal agencies were liable under Maryland law for wrongful
death claims stemming from a Virginia death because the police
chief and municipal agencies' actions all occurred in Maryland.
*Jones*, 378 Md. at 109, 835 A.2d at 639.  The court held that the
individual officer involved in the death was liable in the
wrongful death claims under Virginia law because his wrongful
acts "at least for the most part, occurred in Virginia."  *Id.*  To
the extent that the municipalities were liable under *respondeat
superior*, the wrongful death claims against them would similarly
be governed by Virginia law because the officer's acts largely
occurred in Virginia.  *Id.* at 378 Md. at 110, 835 A.2d at 639.
The court noted that, "[u]nder the plain language of the statute,
it is the place of the wrongful act, and not the place of the
wrongful death, which determines the substantive tort law to be
applied in a particular wrongful death action."  *Id.* at 378 Md.
at 107-8, 835 Md. at 638.

[2] Pl. Resp. at 13-14.  *Debbis* involved a car accident
allegedly caused by defective brakes.  269 F.Supp. at 673.  The
court examined (1) a predecessor to Maryland's current wrongful
death statute and (2) § 391 of the Restatement (Second) of

The Fourth Circuit distinguished and declined to follow *Debbis* in *Farwell* because: (1) *Farwell* was factually dissimilar; and (2) *Debbis* relied on an earlier statute which "may not have appeared so specifically to have directed application of the law of the place of 'wrongful act.'" *Farwell*, 902 F.2d at 287. *Farwell* stated, "to the extent [*Debbis*] may conflict with the result reached by the district court here, we think the latter result is the one dictated by the current statute." *Id.*

*Farwell* makes clear that the choice of law under Maryland's wrongful death statute is determined by the location of the defendant's action. Accordingly, the choice of law analysis in this case will be determined by the location of Metro Aviation's allegedly wrongful acts.

D.   Whether Work Performed by Ferno-Aviation Affects the Choice of Law

The Plaintiffs contend that there is a genuine issue of material fact where Metro Aviation committed wrongful acts

---

Conflict of Laws. At the time, § 391 stated that "[i]t is the law of the place of wrong and not that of the place where the defendant's conduct occurs or the place of death, which governs the right." Restatement (Second) of Conflict of Laws § 391 at 479 (1934). The Restatement defined the "place of wrong" as the "state where the last event necessary to make an actor liable for an alleged tort takes place." *Id.*

*Debbis* held that, "the general ule is that the law of the state where the injury resulting in death occurred determines the rights and liabilities of the parties in an action for wrongful death." *Id.* at 674. Accordingly, the court applied the law of West Virginia, the site of the accident, rather than the law of Virginia, where the allegedly negligent brake work occurred.

because the litter and "floor restraint" were designed and manufactured by non-party Ferno-Aviation, Inc. in Georgia or Ohio, Pl. Repl. at 15-16, Ex. P at 4, H, V, and Milton Gertz, Metro Aviation's managing director, has testified that "[a]ny design work with respect to the medical interior (Emergency Medical System, STC SR09164RC) and other components installed by Metro Aviation in the subject Helicopter was performed by Metro Aviation in Shreveport." Def. Mot. Summ. J. Ex. D ¶¶ 1, 11. The Plaintiffs contend that these differing locations preclude summary judgment for Metro Aviation.

Metro Aviation replies that (1) the Plaintiffs' claims against it center on defects in the litter attachment/locking system, not the litter itself,[3] and (2) the Plaintiffs have not introduced evidence that the litter locking system was designed or manufactured outside Louisiana. Def. Repl. at 10-12. Metro Aviation also contends that the location of design and manufacture work by companies other than itself is immaterial to its motion. *Id.*

Because (1) wrongful-act analysis is defendant specific, and (2) the Plaintiffs have not introduced evidence that Metro Aviation acted outside of Louisiana, the work performed by a nonparty in Georgia or Ohio does not preclude the application of

---

[3] It appears that the "floor restraint" is different than the "litter's locking system." See Pl. Resp. at 16 (referring to both a "floor restraint" and a "litter locking system").

9

Louisiana law.

      E.    Whether the Texas Place of Business of the Issuer of
the FAA Certificate affects the Choice of Law

The Plaintiffs also contend that Metro Aviation's motion
must be denied because Ronald Howard, the FAA Designated
Engineering Representative retained by Metro Aviation, has his
primary place of business in Texas.  Pl. Resp. at 16-18; *see* Def.
Mot. Summ. J. Exs. D, E at 134.  Metro Aviation responds that
Howard was an independent contractor, and his place of business
therefore is immaterial to determining the location of its
wrongful acts.  Pl. Mot. Summ. J. at 14-16; *see* Ex. D ¶ 13.

Under Maryland law, Metro Aviation is not liable for the
acts of an independent contractor.  *Kersten v. Van Grack, Axelson
& Williamowsky*, 608 A.2d 1270, 1272 (Md. Ct. Spec. App. 1992)
(*citing Brady v. Ralph Parsons, Co.*, 308 Md. 486, 511, 520 A.2d
717 (1987) and *Rowley v. Mayor of Baltimore*, 305 Md. 456, 461,
505 A.2d 494 (1986)).  The Plaintiffs have introduced no evidence
that Howard's conduct is attributable to Metro Aviation;
accordingly, his work in Texas would not preclude application of
Louisiana law.

      F.    Whether the Application of Louisiana Law Would
Contravene Maryland's Public Policy

Although Metro Aviation does not dispute that Maryland's
statute of limitations applies to the Plaintiffs' survival claim,
it contends that Louisiana's limitations period controls the

wrongful death claim.  *See* Def. Mot. Summ. J.   The Plaintiffs contend that applying "Louisiana law to the wrongful death claim and Maryland law to the survival claim would contravene Maryland's public policy" because *lex loci delicti* emphasizes the "state's interest in protecting the rights of those persons injured within its borders."  Pl. Resp. at 19-20.

The cases on which the Plaintiffs rely either (1) do not involve a wrongful death claim, e.g., *Erie Insurance Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636 (2007), *Hauch v. Conner*, 295 Md. 120, 453 A.2d 1207 (1983), or (2) apply the law of the place where the defendants' wrongful acts occurred.  *Farwell*, 902 F.2d at 282.  The Maryland wrongful death statute does not preclude the application of Maryland's statute of limitations to the survival claim and Louisiana's statute of limitations to the wrongful death claim.  *See* Farwell, 902 F.2d at 287.

III. Conclusion

For the reasons stated above, Metro Aviation's motion for summary judgment will be denied but--on the basis of the current factual record--it appears that Louisiana law applies to the wrongful death claims against Metro Aviation.


<u>July 15, 2009</u>                    <u>        /s/        </u>
Date                          William D. Quarles, Jr.
                              United States District Judge


11